Thank you, your honors. May it please the court. Pete Patterson for the appellants. The district court's decision in this case must be reversed for two reasons. The reasoning and holding of this court's decision in Colby has been undermined by the Supreme Court's decision in Bruin. And second, under the Supreme Court's decision in Bruin, Maryland's ban on popular semi-automatic rifles is unconstitutional. Okay, well, you filed this suit in 2020, right? Yes. And so Colby was good law then. Wasn't your lawsuit frivolous at that time? Well, it was a good faith effort to change the law. This case is the exact same posture. Based on what? Based on trying to get it to the United States Supreme Court and that it was an incorrect decision. And we submit that under No, Heller was not an incorrect decision. And is Heller still good law? Yes, Heller is still good law. Okay, so Colby was based on Heller. Colby was based on Heller, but Colby misapplied Heller as confirmed by Bruin. Bruin did not change Heller. Bruin clarified Heller. Bruin said that the levels of scrutiny analysis was never a proper mode of analysis under Heller. So it wasn't purporting to change it. It was saying the Court of Appeals had been doing this incorrectly. And then Bruin also said that in Heller we held that law-abiding citizens have a right to use firearms that are in common use today. And that is the analysis this Court declined. And Justice Alito's concurrence in Bruin said that Bruin does not decide anything about the kinds of weapons that people may possess, which was part of Colby's ruling. Well, that was in a concurring opinion. Did anybody in the majority opinion say, Justice Alito, that's just completely off base? No, but that is because Bruin was not changing Heller, but it did clarify Heller with respect to what this Court held in Colby when it said that we held that law-abiding citizens have a right to own firearms that are in common use for lawful purposes as opposed to firearms that are highly unusual in society at large. Do you have any evidence in the record that the types of firearms banned by Maryland are in common use for lawful purposes? We've cited a lot of evidence in our briefs, Your Honor, including that there are over 20 million of these firearms in the United States, that roughly 60 percent of the people use these for 8 out of 10 self-defense as a reason for using these firearms. They're 20 percent of all firearms sold in the nation in recent years. Where in the record is that 60 percent of people use assault weapons for self-defense? This is in the survey of William English, the report of William English that we've cited in our brief, that says that. And that's exactly the type of citations, the source for the assertion that handguns are the most popular firearms for self-defense was a social science paper by Gary Kleck. So it's the same sort of evidence that Heller relied on and as Judge Traxler said in his dissent in Colby, the fact that these firearms are in common use is beyond debate. Every court that has considered this issue has held that these firearms are in common use. And that is Justice Kavanaugh's dissent in Heller, too, while he was on the decent search. But you agree it's not just whether they're in common use? Yes, it's just whether they're in common use. No, in common use for lawful purposes. Okay, common use, yes, common use for lawful purposes. That's the part you keep missing, because if it's just common use, then we don't, we can't have bans on any weapons anywhere. Everybody could have a gun in here if they wanted. Okay, common use for purposes, yes, Your Honor, but as Judge Mannion said in his dissent in Freedman, if law-abiding citizens own something in large numbers, ipso facto, those are in use for lawful purposes, if these law-abiding citizens are owning them. So if you've got tens of millions of citizens owning a type of firearm, they're necessarily, if they're law-abiding citizens, they're using them for lawful purposes. If they're law-abiding citizens. Yes, but in any event, we've got the evidence in the record that these are used for, uh, killing of law enforcement officers. There's evidence that that's what they're used for. No, there's evidence. So only law-abiding citizens are not the only ones using these. But as Judge Kavanaugh said, the true, if you're going to call a weapon an assault weapon, the true choice of firearm for criminals is handguns. Handguns are used to kill people 20 times. I guess your response is that the statute reaches to deny lawfully using, uh, lawful, use persons, uh, lawful persons from possessing. Correct. The statute does not just prohibit unlawful uses of these firearms. They, they prohibit lawful uses. And the evidence that they've pointed to actually strongly undermines their case. Although this, whether criminals misuse these, whether there's some sort of public interest is irrelevant. What evidence strongly undermines their case? Their citation to the, uh, COPER report from 2020, which said these firearms are not different than any other semi-automatic firearms. They don't shoot any, uh, more lethal type of ammunition. And COPER cited two other studies. One from someone named Blau, who found that the use of these firearms in mass shootings was not associated with increased lethality, but the use of handguns and shotguns is. So if anything, these are the least associated with lethality in mass shootings. And then a citation to a study by Webster, who said that states that have bans on assault weapons, they're not associated with less lethality in mass shootings. So their own evidence that they've cited undermines their case. Can you talk to me, I understand that we're sort of talking about the two pieces here, common use and lawful purpose. On common use, um, we now say common use at this time. Do I think about that in the same way that I think about the Eighth Amendment after ROPER? Is it the same sort of analysis? Uh, I, I'm not sure, your honor, a hundred percent. I haven't studied those cases, but it's a similar analysis in that we look at today's society. We see what is in common use. Bruin made very clear, and this was a critical part of Bruin's. All right. So let me go back to, so, okay. Um, what, what do, what do you think of, you gave a couple of different examples, but what do you think of as being the denominator, right? When we think about, is it in common use, right? That, that implies there's a numerator and denominator. Can you help me understand what you think the right denominator and numerator are? I mean, you, you mentioned at one point, the number of guns, um, at another point, uh, the number of people that own them. What's the metric that I'm looking at? The numerator, denominator? Uh, yeah. The numerator, I think, is the number of firearms that are not the number of people. Uh, I don't, I don't mean, cause you could say it's the number of people, 20 million firearms, but you could also say, say there are 20 million people that own them. Yes. Are those different? Um, I don't think they're different. Um, the Supreme Court hasn't delineated between the two, and here are the, uh, evidence. I know, but I'm, I'm, I'm looking for help from you, right? Yes, yes. Is, is, what, what, what should the denominator be? And then what should the numerator be, is what I'm trying to get at. Right. And I, the reason I'm struggling a bit is, I think it's just the total number, and we can see this in Justice Alito's concurrence, in the Catano opinion, when he says there's 200,000 stun guns, and that shows that they're in common use across the nation. And he doesn't have a denominator, he just says it's an absolute number. And I surely, given that, given again, in Heller 2, at that time, there were about 1.6 million, uh, of these firearms that were in circulation, and the court said that clearly is common use. I think once you, and so no one has ever looked at, uh, the owners versus the relevant numerator. Uh, and the evidence here in the English survey, the median number that the owners have owned is one. So those numbers are likely pretty close in any event. And so, so then, then switching to the, to the second piece, the lawful purpose piece, um, a number of courts in, in recent iterations have focused on the self-defense, um, rationale. Um, but if we go back in time, obviously that wasn't the only rationale. There was also a civic, um, rationale in addition to, and so when we see cases like Heller and Bruin, they're talking about the self-defense in addition to the civic purpose. Um, would the civic purpose work here? So in other words, are you limited to saying the lawful purpose is self-defense? That seemed to be the focus as opposed to the civic purpose, which, you know, check on tyranny and the like? Well, so it's any lawful purpose. So that's... And that's what I'm getting at. Do you think those are lawful? Are the civic purposes, what we might think of as the civic purposes behind the second amendment, um, are those things that, so in other words, if you had a statistic that said 20% think it's self-defense and 20% think that they want to have them in, in case of tyranny, um, are those both legitimate concerns? I think those are both legitimate concerns. I think there would be a lawful purpose and that's what, and in fact this, that would show how the right dovetails with what Heller said was the purpose because the purpose was that people would bring their commonly possessed firearms to militia service. So that would be a legitimate purpose. But here we have the evidence again that's clear that self-defense is a common purpose, target shooting is a common purpose, uh, hunting is a common purpose for owning these firearms. The, again, the English survey shows that those are all common purposes for owning these firearms. Can I ask one more follow-up question and then I'll let you go back? So you might think about Bruin is, is setting up a two-step. I know it rejects the old two-step, but you might think it sort of adopts a second two-step, which is do you fall within the second member protection? And we think about that both in terms of are you people, right, law-abiding citizens maybe, or law-abiding something, um, and then also with respect to arms. Um, and my, so that would be step one. And then step two is, is there some historical analog permitting this So one, I want you to talk a little bit about does, is that right? Is that the right way to think about Bruin? And then second, um, am I right to think about step one being the plaintiff's burden and step two being the defendant's burden? Uh, you're, you're right about thinking that the court hasn't assigned a burden at step one. I think it's a purely legal question, so I'm not sure the burden. Well, I thought it explicitly said, it said, it says it's holding, it says that if it's a, a weapon in common use and is implicated by the First Amendment, it's presumptively protected by the Second Amendment. And then it says the government must demonstrate that the regulation is consistent with the nation's historical tradition. Yeah, right. And that's, and that's, that answers step two, right? I'm asking about step one. Yeah. And what our submission is that whoever's burden it is, Heller has already decided this. It says that as a matter of text, the Second Amendment arms means bearable arms. So the only question as a textual matter is, are these bearable arms? And the answer is undoubtedly yes. No one disputes that. So then it falls within the plain text. And then we go to, as you said, step two, although the second part of the one step analysis that we now have. It's a rebuttable presumption. And which is now we have a presumption and they, the other side has an opportunity to come in and say, this is consistent with the nation's history. But here the Supreme Court has already done the history as confirmed by Bruin and said, there are two kind of different traditions at the founding that support. So help me understand why you're putting the, you're putting the common use at the second step. I put it at the first step. Help me understand why, why you're making that move. It seemed, it seemed to me that when they're defining arms, they're suggesting common use, um, at the time for lawful purpose was what was covered by the second amendment, not what was the historical analog as an exception. Well, right. If you go to Heller and again, repeat it in Bruin, it says the second amendment extends prima facie to all instruments that constitute bearable arms. So we take that. They all include that in the first step. Not at that point, your honor. It said, if you look at Heller, where it's talking about defining arms, it says that prima facie extends to all instruments that constitutes bearable arms. And then it goes to talk about limitations on that. And it says one limitation we've found is the carrying of dangerous and unusual weapons. So that is a limitation on the textually defined scope of the right. And that's what Colby was based on. That, that premise, that statement in Heller, that's what the Colby opinion was based on. Where in Bruin does, does the court discuss the primary basis for the Colby ruling, which was, quote, because the banned assault weapons and large capacity magazines are clearly most useful in military service, we are compelled by Heller to recognize that those weapons and magazines are not constitutionally protected. That was Colby's primary basis. Where does Bruin talk about Colby in that respect? Well, it doesn't mention Colby by name, but this court's precedent does not require that. At 2128, Bruin says the Second Amendment protects the possession and use of weapons that are in common use at the time. And Colby expressly refused to conduct a common use analysis and said we aren't doing that. So Bruin undermines the reasoning of Colby. And this was key to the Bruin opinion when discussing a... Well, actually, Bruin, I think, discussed how weapons generally begin in the military and gravitate or migrate to the civilian population, and that it's only, the only analysis is to look in the common use, regardless of whether it came from the military or was like the military. Right, Judge... And they gave examples from going back to the Lanskys. Right, and I was going to mention the example of this was key to the court's decision in discussing New Jersey restrictions, colonial restrictions on carrying handguns. The court said, well, maybe they were considered dangerous and unusual at that time, but they certainly are not today. They're in common use today. And that is the test. And so just as this court in the Banks decision, which we cited in our 28-8 letter, a prior in-bank decision of this court had applied a Supreme Court decision called Styrone, and then later cases from the Supreme Court demonstrated that this court's application of that Styrone case was incorrect and said that the reasoning and holding of that decision was inconsistent with later Supreme Court decisions and therefore were no longer bound by it. So that's the same reasoning that applies here in this case. So I'm about at the end of my time. If there are no additional questions, I'll save time for rebuttal. All right, Mr. Scott. Good morning, Your Honors. May it please the Court, Robert Scott, Assistant Attorney General for the State of Maryland. Here today with me at council table is Brian Frosch, the Attorney General of Maryland. Contrary to the plaintiff's assertions, the Supreme Court in Bruin left intact the portion of this court's in-bank opinion in Colby holding that assault weapons banned by Maryland law are not protected by the Second Amendment because they are similar to M-16s and other military-style weapons more suited to use in the military. As Justice Alito stated in his occurring opinion, and as Judge Thacker pointed out a few moments ago, Judge Alito said, our holding decides nothing about the kinds of weapons that people may possess, nor have we disturbed anything. It doesn't decide the kinds of weapons, but it gives the test, right? So that's the rub, right? It doesn't decide which kinds fit the test, but it gives the test. When we look at 2143, the discussion there gives the test, which is common use for a lawful reason. Well, actually, Bruin uses the language common use for self-defense. Correct, because the issue here with firearms, and they're talking about it in a self-defense context, but the idea is for a lawful purpose, whether self-defense is that purpose, which it was in this case, or it might be a civic purpose in another case. The point is, it gave the test. It didn't answer the question. That's why we're here. Right, but this court has already answered the question, Your Honor, and this court in- Applying a different test, though, is the problem, right? Well, but Bruin didn't reject the test that this court applied. It adopted a different one. That is a rejection, right? Not with respect to assault weapons, and that was that issue in Colby. Can the test that we employed in Colby coexist with this different test that the Supreme Court applied in Bruin, assuming it is a different test? Absolutely. I don't think they're inconsistent, Your Honor. I think they're entirely inconsistent. We said that if it's of a kind, like used by the military. Correct. And that is not the test, whether it's of the kind. The determinant is not whether it's of the kind of the military. The determinant is whether it's in common use. And in the recent opinion, the court went through and explained example after example about weapons that were common use by citizens for self-defense. And I think that if it wasn't explicit, it was pretty close to explicit saying the fact that it was used in the military or similar to use in military is not the test. Well, but that's what Heller says, Your Honor, and- No, Heller doesn't quite say that. I've read that, and I don't want to criticize our Colby decision. But Heller says, talked about military something and like, and like, but then the conclusion in the rest of the sentence doesn't reach the comment. But quite apart from that, we're here under a case where the Supreme Court gave a GBR to the opinion in this case. And the opinion in this case rested solely and singly on Colby. And the court said this was wrong and sent it back. Didn't say it's wrong, granted a GBR. And so here we are under it. So there's a pretty close attachment between this case and Colby. As a matter of fact, it's a one-on-one attachment. The Judge Berdar only relied on Colby in a single paragraph, and it went up. And of course, as you know, in the Supreme Court cited Colby a couple of times as somewhat of an outlier in its opinion. Right. Well, I mean, I don't think there's, I mean, there's no, there's no question that the means and scrutiny analysis that was applied in Colby is- Yeah, but the test involves, the test involved two steps, and we define one or the other. The new test is a single one statement test that's inconsistent with what we applied in Colby. The new test is, is it, is it a bearable arm in common use for a proper purpose? And they said the heart of the proper purpose is self-defense in Colby. So that's the whole test. If that's the test, it's covered by the Second and First Amendment. That's not what we said. That's not the test we applied in Colby. So then the second proposition was, and it rejected any second step, and basically said that creates a presumption of coverage, and it allows the nation to demonstrate the nation's historical traditions. And- Well, Your Honor, again- To rebut the presumption. Again, Bruin doesn't, doesn't say anything about the holding in Colby based on the fact that these weapons are similar to- Well, it didn't address Colby, but it cited Colby a couple of times as an outlier. It's sort of like Buttsy, and it was addressing this, and it clearly was focused on this because the GVR in this case was a Colby case. I understand- Nothing more than a Colby case and nothing less than. It was a single paragraph that relied entirely on Colby and went to the Supreme Court. I understand, Your Honor. Our point simply is that in order for this panel to overrule the court's unbiased opinion in Colby, you have to find that Bruin specifically rejected the reasoning and holding in Colby. All we need to do is to follow Bruin. We don't need to overrule our prior cases. If the Supreme Court comes in with an intervening case that controls what we're doing here, we apply the Supreme Court, regardless of what we did before. Well, right, but- I mean, we don't have to gratuitously go out and say it's overruled. What we have to say is, is this case, how do we determine this case in light of the Supreme Court's subsequent decision, which is before us? Well, under the Banks case, which the plaintiffs cited in their supplemental authorities, which is at 29 F. 4th, 168, this court said that a superseding contrary decision of the Supreme Court must specifically reject the reasoning on which that decision is based. And I would think that sounds right. And the question is, does it reject the notion that relying on military likeness is the proper test? And the answer is, it did address it explicitly and said that's not appropriate. We disagree with that interpretation, Your Honor. I don't believe Bruin says that explicitly. I don't think it implies it. I don't think it addresses it at all. I think it leaves that question open. And because that question is left open by Bruin, this court must follow Colby unless you find that this reasoning was specifically rejected and we don't believe it is. However, in the alternative, even if this court were to find that we're ruled that Bruin did specifically reject reasoning in Colby and overturn that decision, the case cannot be decided at this stage. It needs to be remanded to the district court so that there can be the development of a record in this case before decision can be made. Well, why is it at least the first, the text of the amendment cover these arms? In other words, to me that is the test basically is in common use. That's the essence of the test. And I think even in Colby we recognize that these semi-automatic long rifles were in common use. Well, there's been absolutely no discovery on that issue. We've not been, this case went from a motion to dismiss, which was affirmed on appeal, there was no discovery, there's been no opportunity. What is the discovery that you're going to do? We dispute that these weapons are in common use for self-defense. And what discovery though? I mean, what are you going to get from the plaintiffs? Well, I think if you look at the Miller case in California and the filings in that case, you'll see the kind of discovery that we would do. There are statistical experts who've provided declarations in that case. But nothing you would get from the plaintiffs, right? I mean, when you say discovery, you mean we would go do our own work. We'd get an expert or we'd develop our own. And we'd cross-examine their experts and there would be an adversary proceeding. That's the whole purpose of discovery, is to find the truth, right? To find out what's actually... To find out whether this COPA report is accurate that 60% of people that own these guns use them for self-defense, as opposing counsel said? What that says is that the 60% of people who were asked said in a survey that they bought them for self-defense. I'm going to use it to go shoot up a Walmart. They said, oh, it's for self-defense. Right. So, Your Honor, this is exactly why you need discovery. You need to probe the assumptions, the methodology of these studies and find out whether they're actually reliable. We've had... There's been none of that. They're just citing to studies, some of which were produced by a trade association for the firearms industry. I'm just trying... I don't understand procedurally what you think... Hypothetically, I understand it's not your argument. Assume hypothetically that I found that Colby was overruled by Bruin. Your position would be, we should say that because we have to say that in order to send it back. But then it should go back down. And then if they want to move for a preliminary injunction, they can do that. Or it can go to discovery. But that's all what ought to take place at the district court. And if they seek preliminary injunction, then maybe the district court makes the decision based on the record that's available at the time. Maybe not. Maybe they wait and do discovery. Who knows? But all of that ought to happen there. That's your theory. That's what happens in a civil case. That's the normal procedure that you follow. And there's no reason that the... I mean, that's not what the court did in Bruin though, right? I mean, that's the grub that you've got here is that the court in Bruin doesn't do that. It says we... In fact, rejects the idea. It says, basically, we can look at this because you filed a brief with all the information that's available. They filed a brief with the information that's available. And we can look at it and make those sort of legislative type determinations. Right. But in Bruin, there was no dispute that the weapons at issue were in common use for self-defense. So it was handguns. So, I mean, nobody was saying, oh, handguns are... In fact, Heller says it's the quintessential self-defense weapon. That's not what this case is about. Okay. Then why don't we dispute? We dispute that these weapons are in common use for self-defense and we're entitled to probe their alleged evidence on that. Why isn't that rejected by Staples, right? So Staples says, which is an AR-15 case, right? It's not asking the precise question of are they in common use, right? But it says they've traditionally have been widely accepted as lawful possessions or something to that broad effect, right? I mean, that's the Supreme Court. Admittedly, maybe it's dicta, but we give dicta, even in the Supreme Court, a fair bit of deference here, right? They're resolving that question, right? A question that obviously has evidentiary support. But this question is specific to a specific Maryland statute, which has a specific definition of what's covered and isn't covered. But if a subset of that is widely accepted, right? So that was addressing the AR-15. And so if that is widely accepted in common use, then the broader set, which is all the other things that you're right? So that's just a broader set. They're asking for the entire ban to be declared unconstitutional, including the parts of the ban that apply to guns, which are not in common use for self-defense. So you think you have to do it on a, you don't know, but we, we look at the law and we say, is the law constitutional? No, because it bans these guns. So we enjoin the enforcement of the law. We don't, we don't rewrite it for you. The law lists a number, lists specifically enumerated weapons, which are, which are banned. And there's nothing in the record for, that would permit the court to determine which of those weapons are in common use and which are not. It's, that's why you need the development of a factual record. This, this, there's, you need, this, this is a decision for the district court. If this court's going to say, is going to rule that Colby's over, is overruled by Bruin, here's the test. You have to apply it. It goes back to the district court and the district court in the first instance should apply it based on a factual record that's developed in the normal course. There's no reason this case should be treated any differently than any other case. This is an important case. Don't we just treat it just like Bruin did, right? I mean, that's the, that's the rob, right, is that we've been told by the Supreme Court that it doesn't have to do that. But Bruin involved, there was no dispute that the handguns are, are in common use for self-defense. In this case, we dispute that these weapons are in common use for self-defense. Other disputes, right? They didn't dispute the common use point, although that was a critical part of Bruin, I acknowledge, but they were lots of other disputes, right? That's why they had all the historical records that they were going through, right? All of those were disputes. And you had, the Supreme Court said, we don't need to send it back. We get to do this, right? Well, again, there's, in this case, we agree there were disputes in Bruin on the record. There was different interpretations of the historical information that was provided. But in this case, we, we, we. On a motion to dismiss, right? We even had a, we didn't do this on a motion to dismiss. We did it when Colby was the law. That's what the, that's what the briefing was. Now we have, if the court says we have a new test, there's been, we have not been given the opportunity to submit anything other than what the court could take judicial notice of. And the opposing, the opposing side admitted  they just didn't like that it was the law. Correct. And so when, when the court, in fact, we actually filed an answer to the complaint because we wanted to do discovery in the case. And Judge Bradar said, well, wait a minute. You filed an answer? Why? There's binding precedent. And we had a conference with the judge and he said, why did you file an answer? And we explained to him because we wanted to do discovery for the development of a factual record because we knew that the plaintiff's goal was to get this to the Supreme Court and we wanted a full record. And Judge Bradar said, well, I'm sorry, but I'm going to have to dismiss this case to sua sponte because there's binding precedent. Opposing counsel also says that Justice Alito's concurrence where he says that Bruin does not decide anything about the kinds of weapons that people may possess is really of no moment here because it's only in a concurrence. Do you have a response to that? I disagree. I think it's very, it's very relevant and a very important. And I think that But it is a concurrence. It is. I mean, I'm not going to, obviously, that's correct. Factually, it is in a concurrence. But I think it's also right. I think that Bruin doesn't decide anything about what kinds of weapons people may possess. And that remains an open question. And this court's en banc opinion Well, I thought that was just a generalization saying that we don't per se rule on particular firearms. We apply a standard. The standard is bearable arms in common use for self-defense. And it seems to me that that, he says, is the text of the amendment. And all we have to find, the discovery doesn't add anything to the statute. The statute regulates AR-15s. But the And the question is, if AR-15s are in common use for self-defense, then the statute is too broad. We don't have to go down all 58 or how many weapons are there. You just have to find it's overbroad under the second amendment. But discovery does go to whether these weapons are in common use for self-defense. And the only evidence they've pointed to is a newspaper article of one incident involving one of these weapons being used for self-defense. That's it. We have numbers. They say there's 20 million of them in circulation. But they don't have any evidence that how many of these have actually ever been used for self-defense. The court has never said that you have to show that somebody shot somebody coming in the house. The whole question is, why did a person purchase it? The test is common use, not why you purchased it. It's common use. It's not just common ownership. I'm going to the self-defense problem. I understand that, Your Honor. But I think the point is that they have to be in common use, meaning that they've been used for self-defense commonly. And there's no evidence of that in this record. All they're doing is citing the studies say a lot of people own them. That doesn't meet the test. And so... In Heller, what was the evidence that the firearms in D.C. had been used regularly for self-defense? Again, it was not in dispute. There was no dispute on that issue. Because they didn't require the type of evidence that you're demanding. If they required that evidence, then there would have been a dispute about it. But there's a different... No, because I don't think you can really dispute that it's not disputable. Why do you say that? We have records. There are cases that have cited the statistics, including Colby, that talks about millions and millions of AR-15s purchased by citizens who are lawfully owning them. But the question is, are they commonly using them for self-defense? And there's no evidence in the record to establish that. I just want to make sure I'm clear. Your position is that there can be no dispute that handguns are commonly used for self-defense. It wasn't disputed. I'm just repeating what you said. Your position is that it cannot be disputed that handguns are in common use for self-defense. Obviously, the District of Columbia didn't dispute that fact. Because when you read the opinion, it's clear that it wasn't a disputed fact. And it wasn't disputed in Bruin either. We're not here to make the argument that handguns are not in common use for self-defense. What about Caetano? What was the evidence that the stun guns were used for self-defense in there? Well, that was a criminal trial. And I don't know what the evidence... No, I'm just asking, what is the... It wasn't recounted, and it's not recounted in the opinion. I think Justice Alito referred to 200,000 of them. He still talked about it for self-defense. He did, yes, yeah. Right. But there's no... The opinion doesn't describe any evidence. It's a per curiam opinion. Does your case rise and fall on whether these weapons are for self-defense? That's the test, according to Bruin. I said, does your position rise and fall on that question? I'm not going to concede, Your Honor, that if we lose that point, we lose the case. No. What other aspect to create the presumption? In other words, we have a regulation that regulates AR-15s that are in the millions in the public, owned in the millions in the public by lawful citizens. And the only open question is that, did the citizens buy them for self-defense? Well, I think before you even get to that question, Your Honor, as I've said at the beginning of my argument, it's our position that Colby's still good law, that Bruin didn't overrule it, and that that test... Let me just ask you, this is the whole thing, Colby. This is a quote. Because the banned assault weapons and large capacity magazines are clearly most useful in military service, we are compelled by Heller, on that basis, to recognize that these weapons and magazines are not constitutionally protected. Because these are clearly most useful in the military, that's the test applied. The guns, if the guns are most useful in the military, then they're not protected. Is that the test in any case? Well, that was, that's, Heller... Heller did not say that. Heller explicitly says that M-16s and the like, guns like them can be banned. Right, but that doesn't mean that guns most useful in the military. And of course, this opinion basically was addressing AR-15s and said they're like that, or they're mimicking that, or they're a civilian a gun that is mimicking the gun, military. But my question is, the holding is, because they are clearly most useful in the military, we are compelled to recognize they're not protected. And the quote, Colby went on to say, although an M-16 rifle is capable of fully automatic fire, and the AR-15 is limited to semi-automatic fire... No, I'm talking about the test. Well, that's application. But this is... The test is, the test in Colby, that because it's most useful in the military, it's therefore not protected. I don't... Regardless of the use in the civilian world. Colby draws an analogy between AR-15s, which are covered by the law, and M-16s and points out that they're essentially the same or similar weapons, more useful in the military. That was the test that was applied, and nothing in Bruin changes that. And unless the court has any other questions... Bruin doesn't say the test is what's most useful in the military, defines the line between regulated and non-regulated. Bruin says what's in common use at this point in time for self-defense. But they also said Heller stands. And they also said, nothing we said in Heller has changed. And they said, we don't say anything about the type of guns that or may not possess under the Second Amendment. I believe that my time is up, unless the court has any more questions. Okay, thank you. Yeah, thank you. You have rebuttal. We'll get you back up here. I don't have any rebuttal. Oh, excuse me. That's right. They have rebuttal. Would you like some rebuttal? I'd be happy to take rebuttal if you can afford me. Well, let's see how things develop. All right. Can you start with his point? I take his point to be about severance. That, in other words, we need to look at the statute on a firearm by firearm basis. Maybe the catch-all is like a little bit different. But do you agree with that? No, our understanding is these are all firearms of the same basic type. They're semi-automatic rifles. That's the type of firearm we say is in common use. He says, listen, we've got, you know, line one is AK-47. Line two is AR-15. And so you've got to show each of those, or somebody has to show, without getting into who bears the burden, that it's in common use. No, because they're all the same basic type. So tell me why I'm doing that. That's what Heller does. It looks at handguns. It doesn't say, OK, the Glock handgun, a different brand of handgun is in common use. But the statute there didn't. Whether they are handguns. The statute banned all handguns, right? It didn't ban a list of handguns. That's correct. But they are trying to get at a certain type of firearm. A modern semi-automatic rifle. Our allegations have been they're all the same type of firearms. They haven't, I haven't heard them argue in a brief to say, OK, maybe that's true of some firearms, but this particular firearm is of a different type. But that doesn't say that basic type. If a few firearms on the list of 60 are ones that are not protected, does that save the statute? Well, it'd be their burden to show that. They haven't said that. My question is, would it save the statute? I think that would be a question of severability. We haven't done that analysis. But why would it be severability? The statute as written would have to be strict and they could maybe rewrite it. Yes. I mean, it would be facially unconstitutional. They could rewrite the statute. And in terms of where we go, whether we need discovery, Bruin is very clear. My firm filed the complaint in Bruin and the complaint in this case is the exact same procedural posture in both cases. It was controlled by circuit precedent, decided by a motion to dismiss. The record was exactly the same. Heller, also a motion to dismiss. The Solicitor General of the United States asked for a remand to go down to determine things like well or long guns and adequate substitute handguns. But help me with this. So assume I agree with you that in theory we could do it. Yes. Tell me why we should, right? I mean, because I get the idea that we could and maybe those cases tell us that we could. But we still have this basic idea that we're a court of review, not first review, right? We're a court that like wants somebody else to do the hard work and then we get to sit back and just call it like we see it. Why is this a fundamental constitutional right that's at stake? Your Honor, every day it's being infringed is irreparable harm. You have all the evidence before you that you need to decide this issue. If we look at, for example, the judge, since Kavanaugh's dissent in Heller too on the D.C. circuit, he looked at the same sort of information that we're citing. Judge, Justice Thomas, the author of Bruin, his dissent from denial of certain freedmen looked at the same type of information to say that this type of ban is unconstitutional. Justice Alito's concurrence in Caetano where he said that the stun gun ban was unconstitutional looked at the same type of information. So you have all the information before you. This is a fundamental constitutional right. This is the same procedural posture that Heller and Bruin were in. This should be decided today. And one final point on the common use test. If a firearm is kept in the home for self-defense, that is being used for self-defense. Heller said the right is to be armed and ready. You don't have to actually fire a firearm in order to use it for self-defense. Hopefully no one ever has to fire one of these firearms for self-defense. But if they're kept for that purpose, it's being used for that purpose. What about, does it also include sort of recreational use? So we think about the Second Amendment animating both a civic and an individual right. But I take the point here being lawful purpose is broader than just the Second Amendment's sort of primary interest that recreational use would be included too. Yes, Your Honor. And Justice Thomas says that specifically in his dissent from denial of certain freedmen. He says these are used for self-defense and used in training. And here we've got evidence that 20 million people a year train with these things in the United States. So we ask the Court to reverse and order entry of judgment for the plaintiff. Let me ask you this. There's a footnote in Colby that says we invited further supplemental briefing on the use of the AR-15s. And we said relevant to the issue of self-defense, one survey question asked of your, this is to 500 firearm dealers, of your annual firearm sales for each year from 2011 to 2014, please report the percentages you think were sold primarily for hunting, target shooting, and personal protection purposes. The respondents indicated that they think between 28.1 and 30.5 of the AR-style modern rifles were sold primarily for personal protection. And of course they report in here that it was, I think at one point, up to 8 million sales. Yes, so we've got. Can we use that? You can use that. And we have the same report but updated. Cited in our reply brief, it's NSFF, National Shooting Sports Foundation's firearm retailer survey has the same sort of information. And we relied on it in that. Yes, and you relied on it there. We have the same, we have the consumer survey from the National Shooting Sports Foundation where purchasers of these items said 8.3 out of 10, 10 being the strongest reasons. Is there any limit to your position? If firearms dealers flooded the market with grenade launchers or nuclear weapons and everybody wanted to buy them then to protect themselves, that would then be in common use for a lawful purpose, I assume. No, because we trust, the Supreme Court has said we trust the American people. Oh. The American people, no, it's what is in common use by law-abiding Americans. And so we trust them to make that choice. That is the choice actually the Constitution entrusts them with. And so if a manufacturer floods the market with something that is not useful for those purposes, law-abiding citizens will not buy it. That is the theory of the Constitution. So, thank you. There also probably would be some, at some point, would be some common sense. Yes. That's what I'm looking for. All right, thank you. We would normally come down and greet you. I forgive my little talk and you've heard it and we regret that we're not doing it. But we thank you for your arguments and we hope you come back. Actually, Attorney General Frosch is here, but I'd like to recognize you. From Maryland, you're one of our prime citizens that served the state for a long time. I think you're now turning it over to somebody else, aren't you? I am indeed, Your Honor. I will not be back here as Attorney General. Well, we'll welcome you back anyway and whatever. We'll remember your past service and current service. Thank you very much.
judges: Paul V. Niemeyer, Stephanie D. Thacker, Julius N. Richardson